[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR JUDGMENT
In this case against the defendants City of Bridgeport, the plaintiff obtained a verdict in the amount of $85,000. The defendant City seeks to set the verdict aside and for judgment in favor of the City.
The plaintiff claimed injuries to his ankle and knee. The only specific claim for injuries in the notice given to the City under C.G.S. § 13a-149 consisted of a claim for a severe sprain to the right ankle with severe swelling. It was only after some two years following the original accident of March 8, 1988 that the filed an amended complaint alleging an injury to his right knee which it was claimed was caused by his ankle giving way due to the original injury of March 8, 1988. The defendant City now argues that the City was not given notice of the knee injury as required by C.G.S. § 13a-149.
While this is true, the knee injury occurred on May 5, 1989 and there is no way notice could have been given to the City within the time limited by C.G.S. § 13a-149. The injury to the knee ultimately resulted in arthroscopic surgery which in turn is alleged to have caused a pulmonary embolism. There was no medical testimony introduced at the trial, all medical evidence having been submitted through doctors' reports. While the medical reports were sparse in connecting the knee injury and subsequent arthroscopy and embolism to the original accident of March 18, 1988, there were medical opinions in the reports substantiating such connection. Ultimately, it was for the jury to decide whether all injuries claimed were proximately caused by the original accident of March 18, 1988.
The defendant City further forcefully argued that the jury CT Page 7159 could not reasonably have found that the defect in question was the sole proximate cause of the plaintiff's injuries. Counsel for the City pointed out that the injuries sustained both on March 18, 1988 and May 5, 1989, were due to his own negligence for a number of reasons, among which was the plaintiff's violation of his employers standards of conduct to be followed in deliveries, his stepping into a hole of which he should have been aware after years of deliveries to the same store, the fact that he deliberately obscured his vision by holding trays of bread in front of him while stepping off his truck, and that he took no precautions in using reasonable care to watch where he was going. The Court fully charged on the issue of sole proximate cause and the plaintiff's duty to use reasonable care to protect himself from injury. Again, ultimately, these were issues for the jury to decide as questions of fact, and, the jury apparently decided them in favor of the plaintiff.
Finally, the counsel for the City argued that in view of the claimed special damages for medical expenses and loss of wages of some $127,000, a verdict in the amount of $85,000 strongly reflected a compromise with respect to the issue of sole proximate cause and/or causation with respect to the claimed subsequent injuries to his knee and blood clot resulting in the pulmonary embolism.
It is generally futile to attempt to conjecture as to how or why a jury arrived at its determination of damages. The extent to which the jury found the plaintiff's evidence on his claimed special damages credible, or, his subsequent claims of injury attributable to the original accident of March 18, 1988 is, of course, unknown. The mere fact that the jury award was considerably less than the claimed special damages does not in and of itself show a desire to compromise on the essential issues in the case.
"The matter of damages is peculiarly one for determination in the trial court and the decision can be disturbed only from considerations of the most persuasive character. . . ." HAUK V.ZIMMERMAN, 135 Conn. 259, 260.
Speculation as to how the jury arrived at the amount of its verdict is not so persuasive.
The motions to set aside the verdict and for judgment are denied. CT Page 7160
BELINKIE, J. STATE TRIAL REFEREE